IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) Civil No.: **06 1175** <br> v. ) <br> ) Judge: <br> THE McCLATCHY COMPANY ) <br> ) Filing Date: June 26, 2006 <br> and ) <br> ) <br> KNIGHT-RIDDER, INCORPORATED ) <br> ) <br> Defendants. ) <br> ) | |

**HOLD SEPARATE STIPULATION AND ORDER**

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

I.

**DEFINITIONS**

As used in this Hold Separate Stipulation and Order:

A.   "McClatchy" means defendant The McClatchy Company, a Delaware corporation with its headquarters in Sacramento, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

B.   "Knight-Ridder" means defendant Knight-Ridder, Incorporated, a Florida

-1-

corporation with its headquarters in San Jose, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "*Pioneer Press*" or "*St. Paul Pioneer Press*" means the local daily newspaper referred to as either the *Pioneer Press* or the *St. Paul Pioneer Press*, distributed in the Minneapolis / St. Paul Area, and owned and operated by defendant Knight-Ridder.

D. "*Star Tribune*" means the local daily newspaper, distributed in the Minneapolis/St. Paul metropolitan area, and owned and operated by defendant McClatchy.

E. "Minneapolis/St. Paul metropolitan area" means the area encompassing and surrounding the cities of Minneapolis and St. Paul in the state of Minnesota.

F. "Divestiture Assets" means all of the assets, tangible or intangible, used in the operations of the *Pioneer Press*, including, but not limited to:

1. All tangible assets that comprise the printing, publication, distribution, sale, and operation of the *Pioneer Press* including all equipment, fixed assets and fixtures, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used in connection with the *Pioneer Press*; all licenses, permits and authorizations issued by any governmental organization relating to the *Pioneer Press*; all contracts, agreements, leases, commitments, certifications, and understandings relating to the *Pioneer Press*, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to the *Pioneer Press*;

2. All intangible assets used in the printing, publication, distribution, production, servicing, sale and operation of the *Pioneer Press*, including, but not limited to, all

licenses and sublicenses, intellectual property, technical information, computer software (except defendant's proprietary software) and related documentation, know-how, drawings, blueprints, designs, specifications for materials, specifications for parts and devices, quality assurance and control procedures, all technical manuals and information defendant provide to their own employees, customers, suppliers, agents or licensees, and all research data relating to the *Pioneer Press*.

G.   "Acquirer" or "Acquirers" means the entity or entities to whom defendant divests the Divestiture Assets.

II.

**OBJECTIVES**

The Final Judgment filed in this case is meant to ensure the defendant McClatchy's prompt divestiture of the Divestiture Assets for the purpose of maintaining a viable competitor in the sale of local daily newspapers to readers and in the sale of local advertising in such newspapers in the Minneapolis/St. Paul metropolitan area, and to remedy the anticompetitive effects that the United States alleges would otherwise result from Defendant McClatchy owning the only two local daily newspapers in the Minneapolis/St. Paul metropolitan area. This Hold Separate Stipulation and Order ensures that the Divestiture Assets remain independent and economically viable, and that ongoing businesses will remain independent and uninfluenced by Defendant McClatchy, and that competition is maintained during the pendency of the ordered divestiture.

III.

**JURISDICTION AND VENUE**

The Court has jurisdiction over the subject matter of this action and over the parties hereto, and venue of this action is proper in the United States District Court for the District of Columbia.

### IV.

### COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.  The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (15 U.S.C. § 16), and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendant and by filing that notice with the Court.

B.  Defendant McClatchy shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an order of the Court.

C.  This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

D.  In the event (1) the United States has withdrawn its consent, as provided in Section IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this

Stipulation, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

E.   Defendant McClatchy represents that the divestiture ordered in the proposed Final Judgment can and will be made, and that Defendant McClatchy later will raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

V.

**HOLD SEPARATE PROVISIONS**

Until the divestiture required by the Final Judgment has been accomplished:

A.   Defendant McClatchy shall preserve, maintain, and continue to operate the Divestiture Assets as a competitively independent, ongoing economically viable competitive business, with its assets, management, decision-making functions and operations held entirely separate, distinct, and apart from its other operations. Defendant McClatchy shall not coordinate its production, marketing, or terms of sale of any products with those produced by the Divestiture Assets. Within twenty (20) calendar days after the entry of this Hold Separate Stipulation and Order, Defendant McClatchy will inform the United States of the steps defendant has taken to comply with this Hold Separate Stipulation and Order.

B.   Defendant McClatchy shall take all steps necessary to ensure that (1) the Divestiture Assets will be maintained and operated as an independent, ongoing, economically

viable and active competitor to the *Star Tribune* and any and all other daily newspapers in the Minneapolis/St. Paul metropolitan area; (2) management of the Divestiture Assets, including the performance of decision-making functions regarding marketing and pricing will be kept separate and apart from and not influenced by Defendant McClatchy, including, but not limited to the Divestiture Assets; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making associated with the Divestiture Assets will be kept separate and apart from the operations of Defendant McClatchy, including, but not limited to the *Star Tribune*.

   C. Defendant McClatchy shall use all reasonable efforts to maintain and increase the sale and circulation of the *Pioneer Press* to readers and the sale of advertising in the *Pioneer Press* in the Minneapolis/St. Paul metropolitan area and shall maintain at 2005 levels or levels previously approved for 2006, whichever are higher, promotional, advertising, sales, technical assistance, marketing and merchandising support for the *Pioneer Press*.

   D. Defendant McClatchy shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as economically viable and competitive ongoing businesses, consistent with the requirements of Sections V(A) and V(B).

   E. Defendant McClatchy shall take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition and shall maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

   F. Defendant McClatchy shall not, except as part of a divestiture approved by the United States in accordance with the terms of the Final Judgment, remove, sell, lease, assign, transfer, license, pledge for collateral, or otherwise dispose of any of the Divestiture Assets.

G. Defendant McClatchy shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

H. Defendant McClatchy shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

I. Defendant McClatchy's employees with primary responsibility for sales, marketing and editorial functions of the *Pioneer Press* shall not be transferred or reassigned to any other newspaper, except for transfer bids initiated by employees pursuant to the defendant's regular, established job posting policy. Defendant McClatchy shall provide the United States with ten (10) calendar days' notice of such transfer.

J. At the date that the Final Judgment is filed, and with the written approval of the United States, Defendant McClatchy shall appoint a person or persons to oversee the Divestiture Assets, and who will be responsible for Defendant McClatchy's compliance with this section. This person shall have complete managerial responsibility for the Divestiture Assets, subject to the provisions of this Final Judgment. In the event such person is unable to perform his duties, Defendant McClatchy shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

K. Defendant McClatchy shall take no action that would interfere with the ability of any person or persons appointed pursuant to the Final Judgment to affect the divestiture pursuant to the Final Judgment to an Acquirer or Acquirers acceptable to the United States.

L.  This Hold Separate Stipulation and Order shall remain in effect until consummation of the divestiture required by the proposed Final Judgment or until further order of the Court.

Dated: _____

                                                Respectfully submitted,

**FOR PLAINTIFF**  
**UNITED STATES OF AMERICA**

_____  
Gregg I. Malawer (D.C. Bar #481685)  
United States Department of Justice  
Antitrust Division, Litigation III Section  
325 7th Street, N.W.  
Suite 300  
Washington, DC 20530  
Phone: (202) 616-5943

**FOR DEFENDANT**  
**THE McCLATCHY COMPANY**

_____  
Scott A. Sher (D.C. Bar #490614)  
Charles E. Biggio, Esquire  
Wilson, Sonsini, Goodrich & Rosati  
Two Fountain Square, Reston Town Center  
11921 Freedom Drive  
Suite 600  
Reston, VA 20190  
Phone: (703) 734-3100

**FOR DEFENDANT**  
**KNIGHT-RIDDER, INCORPORATED**

_____  
Ilene Knable Gotts (D.C. Bar #384740)  
Damian G. Didden, Esquire  
Wachtell, Lipton, Rosen, & Katz  
51 W. 52nd Street,  
New York, NY 10019  
Phone: (212) 403-1247

**ORDER**

IT IS SO ORDERED by the Court, this 21st day of July, 2006

_____  
United States District Judge