IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE McCLATCHY COMPANY<br><br>and<br><br>KNIGHT-RIDDER, INCORPORATED<br><br>Defendants. | Civil No.: **06 1175**<br><br>Judge:<br><br>Filing Date: June 27, 2006 |

# FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, and defendants, The McClatchy Company ("McClatchy"), and Knight Ridder, Incorporated ("Knight Ridder"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendant McClatchy to assure that competition is not substantially lessened;

AND WHEREAS, Plaintiff requires Defendant McClatchy to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendant McClatchy has represented to the United States that the divestitures required below can and will be made and that Defendant McClatchy will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW, THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendant under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Final Judgment:

A.     "McClatchy" means Defendant The McClatchy Company, a Delaware corporation with its headquarters in Sacramento, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

B.     "Knight Ridder" means Defendant Knight Ridder, Inc., a Florida corporation with its headquarters in San Jose, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents,

and employees.

C.     *"Pioneer Press"* or *"St. Paul Pioneer Press"* means the local daily newspaper referred to as either the *Pioneer Press* or the *St. Paul Pioneer Press*, distributed in the Minneapolis/St. Paul metropolitan area, and owned and operated by defendant McClatchy.

D.     *"Star Tribune"* means the local daily newspaper, distributed in the Minneapolis/St. Paul metropolitan area, and owned and operated by defendant McClatchy.

E.     "Minneapolis/St. Paul metropolitan area" means the area encompassing and surrounding the cities of Minneapolis and St. Paul in the state of Minnesota.

F.     "Divestiture Assets" means all of the assets, tangible or intangible, used in the operations of the *Pioneer Press*, including, but not limited to:

   1.   All tangible assets that comprise the printing, publication, distribution, sale, and operation of the *Pioneer Press*, including all equipment, fixed assets and fixtures, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used in connection with the *Pioneer Press*; all licenses, permits and authorizations issued by any governmental organization relating to the *Pioneer Press*; all contracts, agreements, leases, commitments, certifications, and understandings relating to the *Pioneer Press*, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to the *Pioneer Press*;

   2.   All intangible assets used in the printing, publication, distribution, production, servicing, sale and operation of the of the Divestiture Assets, including, but not limited to all licenses and sublicenses, intellectual property, technical information,

computer software (except defendant's proprietary software) and related documentation, know-how, drawings, blueprints, designs, specifications for materials, specifications for parts and devices, quality assurance and control procedures, all technical manuals and information defendant provide to their own employees, customers, suppliers, agents or licensees, and all research data relating to the *Pioneer Press*.

G.  "Acquirer" or "Acquirers" means the entity or entities to whom Defendant McClatchy divest the Divestiture Assets.

### III. Applicability

A.  This Final Judgment applies to McClatchy and Knight Ridder, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.  Defendant McClatchy shall require, as a condition of the sale or other disposition of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, that the purchaser(s) agree(s) to be bound by the provisions of this Final Judgment.

### IV. Divestitures

A.  Defendant McClatchy is ordered and directed to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States in its sole discretion, before the later of (1) sixty (60) calendar days after the filing of the Complaint in this matter or (2) five (5) days after notice of the entry of this Final Judgment by the Court. The United States, in its sole discretion, may agree to one or more extensions of this time, not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances.

Defendant McClatchy agrees to use its best efforts to divest the Divestiture Assets, and to obtain all regulatory approvals necessary for such divestitures, as expeditiously as possible.

B.   In accomplishing the divestiture ordered by this Final Judgment, Defendant McClatchy promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendant McClatchy shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendant McClatchy shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process, except such information or documents subject to the attorney-client or work product privileges. Defendant McClatchy shall make available such information to the United States at the same time that such information is made available to any other person.

C.   Defendant McClatchy shall provide to the Acquirer(s) and the United States information relating to the personnel involved in the operation of the Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendant McClatchy will not interfere with any negotiations by the Acquirer(s) to employ any employee of Defendant McClatchy whose primary responsibility relates to the operation of the Divestiture Assets.

D.   Defendant McClatchy shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of any and all facilities relating the operation of the *Pioneer Press*; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial,

operational, or other documents and information customarily provided as part of a due diligence process.

E.  Defendant McClatchy shall warrant to the Acquirer(s) of the Divestiture Assets that the assets will be operational on the date of sale.

F.  Defendant McClatchy shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.  Defendant McClatchy shall warrant to the Acquirer(s) of the Divestiture Assets that there are no material defects in the environmental, zoning or other permits pertaining to the operation of the Assets, and that following the sale of the Divestiture Assets, Defendant McClatchy will not undertake, directly or indirectly, any challenges to the environmental, zoning or other permits relating to the operation of the Divestiture Assets.

H.  Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing newspaper publishing business. Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestiture, whether pursuant to Section IV or V of this Final Judgment:

1.  shall be made to an Acquirer or Acquirers that, in the United States's sole judgment, has the intent and capability (including the necessary managerial,

       operational, and financial capability) of competing effectively in the sale of local daily newspapers to readers and in the sale of advertising in such newspapers in the Minneapolis/St. Paul metropolitan area; and

    2.    shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement(s) between an Acquirer or Acquirers and defendant McClatchy give Defendant McClatchy the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

### V. Appointment of Trustee

    A.    If Defendant McClatchy has not divested the Divestiture Assets within the time period specified in Section IV(A), Defendant McClatchy shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

    B.    After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendant McClatchy any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.        Defendant McClatchy shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendant McClatchy must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.        The trustee shall serve at the cost and expense of defendant McClatchy, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendant McClatchy and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.        Defendant McClatchy shall use its best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities related to the operation of the *Pioneer Press* and Defendant McClatchy shall develop financial and other information relevant to the operation of the *Pioneer Press* as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendant McClatchy shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.      After its appointment becomes effective, the trustee shall file monthly reports with the United States and the Court, setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the trustee has not accomplished such divestiture within four (4) months after its appointment, the trustee shall promptly file with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such report shall not be filed in the public docket of the Court. The trustee at the same time shall furnish such report to the United States, who shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of this Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Notice of Proposed Divestiture

A.      Within two (2) business days following execution of a definitive divestiture

agreement, Defendant McClatchy or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendant McClatchy. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

      B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendant McClatchy, the proposed Acquirer(s), any other third party, or the trustee if applicable additional information concerning the proposed divestiture, the proposed Acquirer(s) and any other potential Acquirer(s). Defendant McClatchy and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

      C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendant McClatchy, the proposed Acquirer(s), any third party and the trustee, whichever is later, the United States shall provide written notice to Defendant McClatchy and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendant McClatchy's limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or V

shall not be consummated. Upon objection by Defendant McClatchy under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

Defendant McClatchy shall not finance all or any part of any purchase made pursuant to this Final Judgment.

## VIII. Hold Separate Order

Until the divestitures required by the Final Judgment have been accomplished, Defendant McClatchy shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court and to preserve in all material respects the Divestiture Assets. Defendant McClatchy shall take no action that would jeopardize the divestiture of the Divestiture Assets.

## IX. Affidavits

A. Within twenty (20) calendar days of the filing of the Complaint and every thirty (30) calendar days thereafter until the divestiture has been completed, whether pursuant to Section IV or V of this Final Judgment, Defendant McClatchy shall deliver to the United States an affidavit as to the fact and manner of their compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts that defendant McClatchy has taken to solicit buyers for the Divestiture Assets and to provide required information to prospective purchasers, including the limitations, if any, on such

-11-

information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendant McClatchy, including limitations on information, shall be made within fourteen (14) days of receipt of such affidavit.

B.    Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendant McClatchy shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendant McClatchy has taken and all steps Defendant McClatchy has implemented on an ongoing basis to comply with Section IV of this Final Judgment. Defendant McClatchy shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendant McClatchy's earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.    Defendant McClatchy shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. Compliance Inspection

A.    For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendant McClatchy, be permitted:

    1.    access during defendant McClatchy's office hours to inspect and copy or, at plaintiff's option, to require defendant McClatchy to provide copies of,

          all books, ledgers, accounts, records and documents in the possession, custody, or control of the defendant McClatchy, relating to any matters contained in this Final Judgment; and

    2.    to interview, either informally or on the record, defendant McClatchy's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the interviewee's reasonable convenience and without restraint or interference by Defendant McClatchy.

    B.    Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendant McClatchy shall submit such written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

    C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the Executive Branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

    D.    If, at the time Defendant McClatchy furnishes information or documents to the United States, Defendant McClatchy represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and Defendant McClatchy marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil

Procedure," then the United States shall give defendant McClatchy ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. No Reacquisition

During the term of this Final Judgment, Defendant McClatchy may not reacquire any part of the Divestiture Assets.

## XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire (10) ten years from the date of its entry.

## XIV. Public Interest Determination

For the reasons set forth in the Competitive Impact Statement filed in this case, and made available for public comment, entry of ths Final Judgment is in the public interest and the parties have complied with the procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16.

Court Approval Subject to Procedures of

Antitrust Procedures and Penalties Act,

15 U.S.C. § 16

Dated: 11/3/06

*/s/ Roberts*

United States District Judge